Selden, J.
It is insisted by the respondent’s counsel that no appeal lies to this court from an order or judgment of a *510 general term, reversing an order of a special term, confirming an apportionment of the debts of an insolvent corporation-among the stockholders, pursuant to the act of 1849; either under subdivision 3, section 11 of the Code, because such order is not final; or under section 28, of the act of 1849, because that, section only authorizes an appeal from an order confirming such apportionment.
The counsel is perhaps right in the first branch of this proposition. The order appealed from may not be final, as section 29, of the act of 1849, provides that, upon the reversal of such an order, a new apportionment shall be directed. But, however .this may be, he evidently misapprehends the scope of the provision contained in section 28 of the act. That section provides, 1st, that an appeal may be taken from the . determination of a justice of the Supreme Court, confirming the apportionment, to a general term; or, 2d, “from ihejudgment of such general term to the Court of Appeals.” The latter branch of this provision- is entirely unrestricted. The first clause limits the right of appeal from a special to a general term, to the case of an order confirming an apportionment ;- but the subsequent provision, for an appeal to this court, is general and unlimited. It treats the determination of the general term, upon the appeal from the special term, as a judgment; and authorizes an appeal from such judgment, irrespective of the question whether it is a judgment of affirmance or reversal.
Upon the merits, it is contended by the appellants, 1st, that the general term had no power to reverse the order of reference ; and, 2d, if it had the power, that the order was right and should have been affirmed. The first of these positions is based upon section 27, of the act of 1849, which provides that no appeal shall be made from an order of a justice referring any matter to a referee under this act. It is insisted that this section prohibits the review of any order of reference purporting to be made pursuant to the act. This, however, is clearly not the literal import of the. clause, which in terms simply prohibits a direct appeal from such an order. The *511 two previous sections regulate appeals directly from orders which immediately precede the order of reference; and then follows section 27, which provides, that no appeal shall be taken from such an order. The grouping of these sections shows, that they all relate to direct appeals from the orders to which they respectively refer. If it had been intended to repeal, in respect to this class of orders, the general provision that, upon an appeal from a final order or judgment, all previous orders may be reviewed, it is fair to presume that different and more appropriate language would have been used. The only question of doubt, therefore, which the case presents is, whether the judgment of the Supreme Court, at general term, was right.
In reversing the order of reference made at special term, that court proceeded upon the authority of the case of The Reciprocity Bank (22 N. Y., 9), hi which this court was called upon to put a construction upon some of the most material provisions of the act of 1849. This act is not free from obscurity ; and there is some difficulty in so interpreting it as to harmonize its various provisions. Its design, however, in one respect, is entirely clear. It was not intended to authorize any proceeding to compel payment by the stockholders until all the assets of the bank, readily convertible into cash, shall have been converted and the avails distributed among the creditors. This is plainly to be inferred from the imperative direction to the receiver to convert the securities deposited with the Comptroller into cash “ with the least possible delay” (§ 12), and from the power given him to sell the assets at auction, with a view to a dividend; and it is rendered still more apparent by the clause giving to the receiver ninety days in which to make the dividend, and authorizing this time to be extended ninety days by a judge. The only conceivable motive for this provision for extension is to enable the receiver to convert and apply all the convertible assets before calling upon the stockholders to make up the deficiency.
It is, therefore, obvious that,.for a receiver to make a dividend among the creditors and proceed against the stockholders, *512 while he has in his hands assets which it is in his power to convert into cash within the most extended time allowed by the act for making the dividend, would be a violation of the spirit of the act, and in conflict with the general scope and tenor of its provisions. This, in substance, is what was held by this court in the case of The Reciprocity Bank. It appeared in that case that the receiver, at the time of making his report upon which the order of reference was founded, had in his hands, not only several parcels of real estate unsold, but choses in action, and other demands to a large amount, deemed by him to be good and collectible. Ho attempt had been made, so far as appeared, to obtain the authority of a judge for selling these assets at auction; the only reason given for not having converted them into money being that prices were depressed, and that, in the opinion of the receiver, the interests of the creditors would be promoted by making further efforts to collect the debts. For aught that appeared in the report, the assets in the hands of the receiver, convertible into cash by a sale at auction, might have been sufficient, or nearly so, to pay all the creditors. The question, therefore, which that casp presented, was, whether a receiver, having in his hands real estate and other effects of the bank to a large amount, without asking for authority to sell, or in any manner referring the propriety of a sale to the discretion of a judge, could, from some caprice of his own, or because he might think the property would sell for a higher price at some future day, declare a dividend of some trifling sum, and then proceed against the stockholders. It was held that he could not, and that an order of reference, made under such circumstances, was erroneous, and should be set aside.
But it does not necessarily follow that no such order can be made in any case until all the assets, or all not involved in litigation, are actually converted into cash.' Demands in litigation are expressly provided for by section 28. They clearly need not be converted and applied before proceeding against the stockholders. The question is as to other effects and demands. The position taken by the respondents is, that under *513 no circumstances can proceedings be instituted against the stockholders until all the assets in the hands of the receiver, . not in litigation, have been converted into money. It would be difficult to reconcile this position with the provisions of the act. The receiver is absolutely required, by section 12, to declare a dividend within the period of one hundred and eighty days from the time of his appointment. He cannot sell any of the demands due to the corporation without the authority of a judge. If, therefore, for any reasons, the judge, when applied to, deems it inexpedient to sell, and withholds the necessary authority, the receiver has no power to convert into cash such demands as cannot be collected within the one hundred and eighty days. These provisions are irrecon ■ cilable with the position that the whole effects must, under all circumstances, be converted before calling upon the stockholders.
The true interpretation of the act seems to me to be this: The assets of the bank are deemed the primary fund for the payment of its debts. The creditors, however, are not to be delayed beyond the period of six months, for the purpose of converting these assets, before proceeding against the stockholders. All that can be realized in that time by collection, or by a sale to which no reasonable objection exists, is first to be applied. If, however, there is sufficient reason for postponing a sale of any portion of the demands due to the bank, beyond the one hundred and eighty days, the creditors are not bound to wait for a future sale, but a dividend must be made, and the stockholders must pay the deficiency and receive the avails of the remaining assets.
The only question of doubt which this interpretation leaves is, whether the propriety of postponing a sale, beyond the time in which it is necessary to make a dividend, is left entirely to the discretion of the receiver, or whether that question must be referred to a judge. This doubt was resolved by the decision in the case of The Reciprocity Bank. Before a receiver can proceed against the stockholders, his report must show, either that all the assets not in litigation have been converted *514 by sale or otherwise, dr that a judge has deemed it expedient that a sale of the whole or some portions of the demands due to the bank should be postponed beyond the period within which a dividend must be made. This construction accords with the general scope and object of the act, and should be adopted rather than one which would leave it to the caprice of a receiver to determine whether the debts should be paid in the first instance from the assets of the bank, or collected from the stockholders.
A receiver, therefore, who has assets on hand, consisting of choses in action, not in litigation, can make no dividend with propriety until he has applied to a judge and taken his direction as to a sale. If the judge directs a postponement of the sale, beyond the one hundred and eighty days, the receiver must then, of course, proceed to declare a dividend, and make his report without waiting for the sale. It can make no difference with these principles, that the receiver has suffered the one hundred and eighty days to elapse without making any dividend. He may still distribute the funds in his hands, and proceed against- the stockholders for the deficiency. (Empire City Bank, 18 N. Y., 199; The Reciprocity Bank, 22 N. Y., 9.) But it is, nevertheless, as much his duty first to convert and apply the assets of the bank, as it was before the expiration of the time allowed by the statute. . He has power to sell at auction everything except choses in action without the authority of a judge. His report, therefore, must show that all the assets, not requiring such authority, have been converted into cash; and if any demands remain unconverted, it must also show that, upon application to a judge, it was deemed expedient by him, that a sale of such demands should be 'further postponed. In the case of the Reciprocity Bank, the report of the receiver, although made more than a year after his appointment, showed a large amount of unconverted assets, in- ° eluding choses in action, still on hand; and it did not appeal that any effort had ever been made, to obtain the authority of a judge, for a sale of the choses in action remaining uncol lected and unsold.
*515 In the present case, on the contrary, the proceedings would seem, to have been conducted in most respects in view of such a construction of the statute, as that here suggested. I am inclined however to think that the making of the first dividend, which is to lay the foundation of proceedings against the stockholders, cannot be properly delayed beyond the one hundred and eighty days. The authority to postpone, conferred by section 12, being specific, and applying to that particular act of the receiver, and nothing else, I scarcely think the provision can be considered as nullified by the subsequent general provision in section 23, authorizing a judge to postpone some of the proceedings for a year. But within the time allowed by section 12, I see no objection to doing as was done in this case, viz., making a preliminary distribution of any funds which the receiver may have on hand in advance of the formal dividend provided for by that section.
In respect to the unconvertéd assets, the receiver seems to have proceeded in every step by the direction of a judge. Before making a dividend, which was to charge the stockholders with a deficiency, he made a full report, setting forth by schedule all the assets and describing the character and situation of such as remained unconverted, and asked for an order directing an “ immediate sale ” at auction, of such portions as the judge should deem it expedient then to sell. An order was obtained, which on subsequent application was modified from time to time. This was a very proper proceeding, and in precise accordance with the construction of the statute which has been here adopted, except that all this should have been done before the expiration of the time prescribed in section 12, for making the dividend. The delay, however, does not affect the present question. The final report of the receiver shows, that before the dividend was actually made, all the assets, not in litigation, had been converted, except certain choses in action which he had refrained from selling by the order of the judge. The receiver could do no more. He was bound by statute to make the dividend, and could not sell without the authority of a justice of the court. Under these *516 circumstances it was the duty of the judge, to whom the report was made, to make the order of reference; and hence the court, at general term, was wrong in reversing it. These views in no respect conflict with the decision in the case of the Becijprocity Bank; although language may have been used in that ease which, in its application to a case not then before the court, might tend, in some degree, to a different conclusion.
The judgment at general term should be reversed, and the order of reference and subsequent proceedings at special term should be affirmed, with costs, to be paid by the appellants.
All the judges concurring, except Hoyt, J., who expressed no opinion.
Ordered accordingly.